NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**EPIC GAMES, INC.,**
*Appellant*

**v.**

**INGENIOSHARE, LLC,**
*Appellee*

---

2023-2177, 2023-2178, 2023-2179, 2023-2180

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2022-00202, IPR2022-00291, IPR2022-00294, IPR2022-00295.

---

Decided: April 24, 2025

---

CAROLYN CHANG, Marton Ribera Schumann & Chang LLP, San Francisco, CA, argued for appellant. Also represented by RYAN J. MARTON.

STEPHEN ROBERT RISLEY, Kent & Risley LLC, Alpharetta, GA, argued for appellee.

---

Before DYK, CLEVENGER, and PROST, *Circuit Judges*.

DYK, *Circuit Judge*.

Appellant Epic Games, Inc. ("Epic") appeals the final written decisions of the Patent Trial and Appeal Board ("Board") in IPR2022-00202, IPR2022-00291, IPR2022-00294, and IPR2022-00295, concerning U.S. Patent Nos. 10,142,810 (the "'810 patent"), 10,708,727 (the "'727 patent"), and 10,492,038 (the "'038 patent") (collectively, the "challenged patents"). The challenged patents are generally directed to managing electronic communications. The patent claims recite the term "network-based portal," which the Board construed as residing on the server side of a network for all three patents. Based on this claim construction, the Board determined that Epic had not demonstrated that the prior art relied on in the petition disclosed a network-based portal as required by the challenged patent claims, and thus that Epic had not demonstrated that claims 1–20 of the '810 patent, claims 1–9 and 15–17 of the '727 patent, and claims 7–12, 22–24, and 33–67 of the '038 patent (the "challenged claims") were unpatentable as obvious. We *affirm*.

## BACKGROUND

IngenioShare, LLC ("IngenioShare") is the owner of the '810, '727, and '038 patents. The challenged claims generally recite certain patented functionality for managing electronic communications, including providing communication options to a user, selecting different communication modes or options, sending and receiving messages, and allowing a user to block communications and control the sharing of contact information. We refer to that functionality as the communications management functionality. The claims also recite that the communications management functionality uses "a network-based portal at least based on Internet protocol." For example, claim 1 of the '810 patent recites:

1. A computer-implemented method for managing electronic communications using at least a <u>network-based portal</u> at least based on Internet protocol, the method comprising:

providing a plurality of communication options to a first user to be selected as a selected option of communication for a message from the first user to the second user via an electronic device associated with the second user

. . . .

wherein all of the communication options use one identifier associated with the second user for the second user to receive messages, at least in view of the <u>network-based portal</u> being based on the Internet protocol;

receiving an indication regarding one of the plurality of communication options, via the <u>network-based portal</u>, from an electronic device associated with the first user . . .

permitting the second user to block the first user from reaching the second user via the <u>network-based portal</u>; and

enabling, via the <u>network-based portal</u>, the message to be received by the second user through the electronic device associated with the second user, using the selected option of communication, based on the one identifier associated with the second user, in view of the second user not blocking the first user from reaching the second user . . .

> wherein the method comprises determining availability of the second user,
>
> wherein the method requires contact information associated with the second user to allow the second user to receive messages via the <u>network-based portal</u>,
>
> wherein even when the message is received by the second user through the electronic device . . . the contact information associated with the second user is not provided via the <u>network-based portal</u> to the first user through the electronic device associated with the first user, and
>
> wherein the one identifier associated with the second user is distinct from the contact information associated with the second user.

'810 patent, col. 20 ll. 2–58 (emphasis added); *see also* '727 patent, col. 19 l. 61–col. 20 l. 63 (claim 1); '038 patent, col. 21 l. 50–col. 22 l. 43 (claim 7).

Epic petitioned for inter partes review ("IPR") of the challenged claims in four separate IPRs, alleging that the claims of the three challenged patents were obvious over certain prior art references that disclosed communication management systems and electronic messaging systems.[1] The Board did not reach whether the prior art made such disclosures but instead focused its determinations on

---

[1] Across the different IPRs, Epic argued that the claims were obvious over different combinations of the prior art references Diacakis, Hullfish, Loveland, Tanigawa, and/or Takahashi although Epic did not assert all of those references against every claim.

whether the prior art disclosed the claimed "network-based portal."

In all four IPRs, the parties disputed the construction of "network-based portal" and, in particular, whether the claimed portal must reside only on the server side of the network or may also encompass client-side functionality, like a client-side user interface. Epic argued that the term is broad enough to capture client-side interfaces, and in its petitions, Epic identified figures in the prior art showing client-resident user interfaces, which Epic argued disclosed the network-based portal. *See, e.g.*, J.A. 385, 416–17; J.A. 4607, 4639–40; J.A. 5742–43; J.A. 6943–44. IngenioShare argued the claimed portal is distinguishable from a client device and instead must reside on the server side of the network.

Concerned that IngenioShare's construction would exclude embodiments depicted in figures 7–11 of the specifications, the Board at institution disagreed that a network-based portal resides only on the server side of the network, but it invited the parties to provide additional briefing about the meaning of network-based portal. In its final written decisions, a majority of the Board determined that a network-based portal resides on the server side of the network. *See Epic Games, Inc. v. IngenioShare, LLC*, No. IPR2022-00202, Paper No. 29, at 28 (P.T.A.B. May 19, 2023) ("*Board Decision*").[2] The Board began with

---

[2]    Citations to the Board's final written decisions here are to the final written decision in IPR2022-00202 for the '810 patent. The relevant portions of the Board's final written decisions in IPR2022-00291, IPR2022-00294, and IPR2022-00295 are substantively identical. *Compare Board Decision with Epic Games, Inc. v. IngenioShare, LLC*, No. IPR2022-00291, Paper No. 30 (P.T.A.B. May 19,

dictionary definitions, which generally defined a "portal" as a website that serves as an entry point or starting site to the Internet. The Board then determined that these definitions were consistent with the specification's uses of the terms "portal" and "gateway," which the Board concluded were synonymous. In its final written decisions, the Board ultimately accepted IngenioShare's argument that a person of ordinary skill in the art would understand that figures 7–11 are directed to methods performed on a client device upon receiving a message, and IngenioShare's construction did not exclude embodiments from the claims.

Based on its claim construction, the Board then concluded that Epic had not demonstrated that the prior art relied on in its petitions disclosed a server-side network-based portal. The Board determined that the interfaces that Epic identified in the prior art were "client-resident user interfaces," *Board Decision* at 36–37, and were not on the server-side, and thus, Epic had not demonstrated that the challenged claims were unpatentable. Administrative Patent Judge Amundson dissented from the Board's claim construction. He agreed with Epic that "a 'network-based portal' encompasses a user interface in a client device that connects clients to a network." J.A. 61; J.A. 127; J.A. 189; *accord* J.A. 253.

Epic timely appealed. We have jurisdiction pursuant to 35 U.S.C. § 1295(a)(4)(A).

---

2023), *Epic Games, Inc. v. IngenioShare, LLC*, No. IPR2022-00294, Paper No. 30 (P.T.A.B. May 19, 2023), *Epic Games, Inc. v. IngenioShare, LLC*, No. IPR2022-00295, Paper No. 27 (P.T.A.B. May 19, 2023). Similarly, throughout this opinion, we cite to the specification of the '810 patent, which, in relevant parts, is the same as the specification for the '727 and '038 patents.

DISCUSSION

I

On appeal, Epic challenges the Board's construction of "network-based portal" as residing only on the server side of the network. Epic argues that the specification's discussion of the phone performing the communications management functionality, including in figures 7–11, demonstrates that the claimed "network-based portal" is broad enough to encompass a client-side interface residing on the client device.

"Claim construction requires a determination as to how a person of ordinary skill in the art would understand a claim term 'in the context of the entire patent, including the specification.'" *Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1362 (Fed. Cir. 2016) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc)). In reviewing the Board's claim construction, we review the ultimate claim construction de novo and the Board's subsidiary factual determinations concerning extrinsic evidence for substantial evidence. *Perfect Surgical Techniques, Inc. v. Olympus Am., Inc.*, 841 F.3d 1004, 1012 (Fed. Cir. 2016).

In construing the claims, the specification is "the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). The specification here, while not a model of clarity, discloses two general embodiments for performing communications management—in one embodiment, the network-based portal performs the communications management functionality and in another, an electronic device (e.g., a phone) performs the communications management functionality. For example, in the first embodiment, the specification provides that "a portal is formed allowing the user to receive communications from numerous sources through different modes," and

this portal "can be used to control the selection and setting of different intelligent communication modes for the user." '810 patent, col. 4 ll. 13–15, 39–41; *see also id.* col. 5 ll. 60–61 ("[A] portal provides a number of intelligent communication modes . . . ."). The portal can "include[] a database to keep track of the user's different contacts . . . and the access priorities of each contact" and can "dynamically change the access priorities of a caller trying to reach the user." *Id.* at col. 4 ll. 53–55, 63–64; *see also id.* at col. 6 l. 39 ("The database can, for example, be in the portal.").

In the second embodiment, a client device performs the same communications management functionality. The specification describes that databases and "intelligent communication modes [for selection] . . . are in the phone" and the phone "automatically manage[s] the communication." '810 patent, col. 7 ll. 13–15, 24–25; *see also id.* at col. 6 ll. 40–41 ("[T]he database is in a personal communication device of the user."); *id.* at col. 7 ll. 6–27 (noting that defining contact classes, setting up the access priority database, and categorizing a user's contacts all may occur in the phone). The specification does not describe the portal as located in the phone even though it describes elements for the communications management functionality, like databases, as being in the phone. The specification describes that the phone can interact with and utilize the portal, suggesting the portal is separate from the phone. For example, it describes the following:

> A portal or gateway approach could provide general Internet access to one or more embodiments of the communication management systems so that users can configure the system behavior they desire. The portal or gateway can then facilitate download of a database or update thereto to a communication device, such as a phone.

*Id.* at col. 6 l. 66–col. 7 l. 5; *see also id.* at col. 6 ll. 40–44 (describing that when the database is in a personal

communication device, "[t]he portal accesses the personal communication device").

While the specification demonstrates that the portal does not reside on the phone, it does not make clear where the network-based portal is located.[3] The claims are clear that a "portal" is "network-based." Substantial evidence from the dictionary definitions (not presented before institution) supports the Board's determination that a portal resides on the server side of the network. *Phillips*, 415 F.3d at 1322–23 ("[J]udges are free to consult dictionaries and technical treatises [']at any time in order to better understand the underlying technology and may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents.[']" (quoting *Vitronics*, 90 F.3d at 1584 n.6)).

The Board, as permitted by *Phillips*,[4] considered the following dictionary definitions as to the meaning of the word "portal":

---

[3]   IngenioShare argues that the specification defines a "portal" as a "gateway," and the specification further defines "gateway" as a "networked server." But even assuming the specification uses the term "portal" as synonymous with "gateway," the specification's single reference to "a gateway computer" as "one example of a networked server" is not determinative of a network-based portal residing only on a server. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 805 F.3d 1368, 1375 (Fed. Cir. 2015) (explaining that use of a term in one (preferred) embodiment "does not provide the clarity necessary to find that the patentees intended to limit the term . . . to the . . . embodiment").

[4]   *See also Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008) (explaining it is

10                    EPIC GAMES, INC. v. INGENIOSHARE, LLC

- "In the context of the Internet, a portal refers to any commonly used website serving as an entry point to the Internet, usually with many links to a wide variety of information, data, resources, and services." J.A. 5412 (quoting Portal (Internet), Techopedia (last updated Dec. 2016), https://www.techopedia.com/definition/13077/portal-internet).

- "Portal is a term, generally synonymous with gateway, for a World Wide Web site that is or proposes to be a major starting site for users when they get connected to the Web or that users tend to visit as an anchor site." J.A. 5412 (quoting Portal, TechTarget (last updated Dec. 2021), https://www.techtarget.com/whatis/definition/portal).

- "A portal is a web-based platform that collects information from different sources into a single user interface and presents users with the most relevant information for their context." J.A. 3816.

- "A mobile portal is an Internet gateway that enables mobile devices to connect remotely with an enterprise intranet or extranet, typically via a Web browser interface." J.A. 3821.

These dictionary definitions generally describe portals as "websites" or "web-based platforms." IngenioShare's expert Dr. George Rouskas provided the first two definitions and further opined that "[w]ebsites are hosted on web servers, not on client communication devices." J.A. 5412 ¶ 49. He further opined that the definitions are consistent with his understanding of the word portal based on his more

---

"entirely appropriate" to turn to extrinsic evidence when "the intrinsic evidence is silent as to the plain meaning of a term").

than thirty years of experience and that these definitions had not changed over the last twenty–thirty years.

We agree with the Board that there is no "meaningful conflict" between the definitions and that they provide context for understanding the meaning of network-based portal. *Board Decision* at 17. Construing "network-based portal" to reside on the server side of a network is not inconsistent with the claim language or specification. That there are embodiments in the specification where the communications management functionality is performed by the phone does not mean that a portal resides on the phone, and as already explained, the specification instead supports the view that the network-based portal is not a part of the phone.

Epic argues that figures 7–11 show embodiments where "network-based portal" functionality is performed by a user's phone, and construing "network-based portal" to reside on the server side of a network excludes preferred embodiments. *See* Appellant's Reply Br. 17. Figures 7–11 depict a portion of communication management (call, audio message, text message, and reply message responses as well as a message presentation process) performed by an electronic device such as a phone. The Board determined that "the issue is not merely whether the client device is capable of implementing functionality in some embodiments that is implemented by a server-resident network-based portal in other embodiments[,] [but] . . . instead whether that functionality is specifically implemented at the client with what Petitioner adequately shows to be a 'network-based portal.'" *Board Decision* at 23. In other words, that the figures depict processes performed on a phone does not mean that the network-based portal is located on the phone. These figures and their descriptions are not inconsistent with an embodiment where some functionality is performed by a phone and other functionality is performed by a server-side network-based portal. Notably,

the portions of the specification describing these figures does not use the term "portal" or "network-based portal."

To be sure, the definition of "network-based portal" as residing on the server side of the network does not exclude combining the network-based portal with a phone to perform the communications management functionality or accessing the portal through the phone. As explained, the specification in fact contemplates such a combination. But Epic did not dispute the Board's determination that the interfaces it identified on the electronic devices in the prior art were "client-resident user interfaces," and it did not argue that the prior art rendered the claims obvious because it depicted communication functionality performed by a phone in combination with a network-based portal as defined by the Board.

## CONCLUSION

We have considered the parties remaining arguments and find them unpersuasive. We *affirm* the Board's claim construction that a "network-based portal" resides on the server side of a network and its determination that Epic did not demonstrate that the claims are unpatentable as obvious.

**AFFIRMED**